**In re Alan N. PONANSKI, Debtor.**

**Bankruptcy No. 8000941.**

United States Bankruptcy Court,
D. Rhode Island.

June 10, 1981.

Robert Berkelhammer, Levy, Goodman, Semonoff & Gorin, Providence, R. I., for debtor.

Timothy O'Brien, Boston, Mass., for Boston College.

John Boyajian, Boyajian, Coleman & Harrington, Providence, R. I., for trustee.

## DECISION DENYING CONFIRMATION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

The Debtor seeks confirmation of his Chapter 13 payment plan which provides for the discharge of education loans which first became due within the past five years. The Trustee objects to confirmation.

Alan Ponanski is employed as a budget analyst for the State of Rhode Island with a monthly take-home pay of $919.34. He schedules unsecured indebtedness of $29,-

097.86, $15,823.21 of which are education loans owed to three creditors.[1] Initially, the plan proposed 36 monthly payments of $134.31, yielding a dividend of approximately thirteen and one-half percent (13.5%) to unsecured creditors. However, at the hearing on confirmation the plan was amended, increasing the monthly payments to $219.34. This would provide a twenty-two percent (22%) dividend to creditors. When questioned about what change in his financial condition permitted such an increase in monthly payments, Mr. Ponanski's counsel replied that this amount had been set aside as a "cushion" should Ponanski "become married." Ponanski's creditors would receive nothing in a Chapter 7 proceeding.

In Chapter 7, education loans are nondischargeable within five years of when they first become due, except in cases of undue hardship. Bankruptcy Code § 523(a)(8), 11 U.S.C. § 523(a)(8).

Under Chapter 13, however, debts for education loans are dischargeable. Consequently, and as a prerequisite to this broader discharge, the debtor must submit for court approval a plan which satisfies the court that "[t]he plan has been proposed in good faith and not by any means forbidden by law." § 1325(a)(3).

■ The Bankruptcy Code does not define "good faith," and the legislative history is similarly silent. In determining the meaning of that phrase, the objectives of the Bankruptcy Code must be kept in mind, and the court should "rely upon the common sense and the perception of justice and equity in the federal courts to assure the fair administration of the new Chapter 13." *In re Hurd*, 4 B.R. 551, 558, 6 BCD 412, 417 (Bkrtcy.W.D.Mich.1980); *In re Yee*, 7 B.R. 747 (Bkrtcy.E.D.N.Y.1980); *In re Levine*, 10 B.R. 168 (Bkrtcy.D.Mass.1981). "[T]he basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of [the Chapter]." 9 *Collier on Bankruptcy*, ¶ 9.20 at 319 (14th ed. 1978).

---

1. The lenders of these education funds claim the amount owed to them by Mr. Ponanski is over $18,000.

Viewed in this light, "good faith" is not quantifiable, but rather must be considered on a case-by-case basis. A determination of whether a given plan has been proposed in "good faith" must depend on all the facts before the judge. In this regard, the extent to which the Chapter 13 debtor would be discharged from debts nondischargeable in Chapter 7 is a substantial factor. *In re Yee, supra; In re Smith*, 8 B.R. 543 (Bkrtcy.D.Utah 1981). See also, *In re Hurd, supra.*

I recognize the conflict which has developed among courts that have been presented with the question of whether the type of debt sought to be discharged and the amount provided for by a Chapter 13 plan are relevant factors to be considered in determining if the plan should be confirmed. This Court believes that these are relevant factors and is in accord with the line of cases so holding, *see, e. g., In re DeSimone*, 6 B.R. 89 (Bkrtcy.S.D.N.Y.1980); *In re Yee, supra; In re Marlow*, 3 B.R. 305 (Bkrtcy.N.D.Ill.1980), and specifically rejects the result in those cases holding that these factors may not be considered, *see, e. g., In re Thorson*, 6 B.R. 678 (Bkrtcy.D.S.D. 1980); *In re Terry*, 3 B.R. 63 (Bkrtcy.W.D. Ark.1980), *reversed*, 630 F.2d 634 (8th Cir. 1980).

In the present case, more than half of the debt sought to be discharged consists of education loans which would be excluded from a Chapter 7 discharge, and the Debtor proposes to pay creditors less than one-fourth of their claims. On the facts as presented, the Court cannot find that the proposed payments represent "good faith" within the meaning of § 1325(a)(3).

In arriving at this conclusion, the Court views the amendment of the Debtor's plan, coming as it did at the hearing on confirmation, and without a credible explanation as to why extra funds were suddenly available, as an attempt by the Debtor to meet what he estimates to be the minimum standard for confirmation, while retaining as much as he can.[2] I see this as an absence of good faith.

Confirmation is denied.

---

2. Notwithstanding the vagaries of the statute, which lends itself so easily to the myriad of interpretations and diversity of opinions that have emerged from the courts since October, 1979, I do not think that Congress intended Chapter 13 to be a guessing game where the debtor gambles as to how close he or she can propose a plan to what the court will accept.

In my view, "good faith" should have more to do with what a debtor can afford to pay, than with what the debtor "figures" the judge will tolerate as a minimum payment. This reasoning obviously has even stronger application in Chapter 13 cases where the debtor seeks to be relieved of financial obligations not dischargeable in Chapter 7.