**In re Michelle ELLENBURG, Debtor.**

**Bankruptcy No. 87–02988.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

June 23, 1988.

Hoke Smith, Clark & Smith, P.C., Atlanta, Ga., for debtor.

David B. Kurzweil, Macey, Wilensky, Cohen, Wittner & Kessler, and John L. Skelton, Jr., Hayt, Hayt & Landau, Atlanta, Ga., for creditors.

### MEMORANDUM OF DECISION

JOYCE BIHARY, Bankruptcy Judge.

The debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. The debtor's amended plan calls for payments of $140.00 per month for 50 months, resulting in total payments of $7,000.00 and payments to unsecured creditors of 15 cents on the dollar.

Three creditors have objected to the confirmation of the debtor's Chapter 13 plan on the grounds that the debtor is not eligible for relief pursuant to 11 U.S.C. § 109(c) and on the grounds that the plan was not filed in good faith as required by 11 U.S.C. § 1325(a)(3).

### FINDINGS OF FACT

The facts of this case are as follows:

1. The debtor is a 28-year old dental student at the Medical College of Georgia, School of Dentistry, in Augusta, Georgia. The debtor plans to complete dental school in June of 1990.

2. The debtor was married approximately four months after the petition was filed, and the debtor's husband and his family are supporting the debtor through dental school.

3. The debtor lives in a rented cottage in Augusta, Georgia during the week while she attends school, and she comes to Atlanta to live with her husband on the weekends.

4. The debtor receives $500.00 per month from her husband for performing bookkeeping work for her husband and his business on the weekends.

5. The debtor's only secured debt is an obligation to Bank South in the amount of $765.15.

6. The unsecured claims total $41,180.09. Of this amount, $34,595.00 is comprised of the following claims relating to the debtor's education.

| | |
|---|---|
| Emory University | $17,500.00 |
| Tufts University | $ 9,746.54 |
| United States Department of Education | $ 3,205.65 |
| Georgia Student Finance Authority | $ 2,322.58 |
| Georgia Higher Education Assistance Corporation | $ 2,172.53 |

7. The objecting creditors are the Georgia Student Finance Authority, the Georgia Higher Education Assistance Corporation and Bank South. While Emory University originally objected to confirmation, it subsequently withdrew all of its objections.

8. The debtor's apparent motivation for seeking relief under the provisions of Chapter 13 is to discharge a large number of debts relating to her educational expenses, some of which arose from student loans which would be nondischargeable in a Chapter 7 case and some of which resulted from a troubled family situation and the mistaken belief that her mother was paying her tuition.

9. The duration of the plan as amended is 50 months. The plan as originally proposed would have lasted less than 36 months and would have been unconfirmable pursuant to U.S.C. § 1325(b)(1)(B). The

debtor amended the plan on January 11, 1988 and filed a pleading clarifying the terms of the amended plan on May 6, 1988, stating that the plan would last 50 months.

10. The debtor has attended numerous educational institutions. While the debtor never obtained an undergraduate degree, the debtor attended Emory University for two years and also attended Georgia Tech and Baylor University in Houston, Texas as an undergraduate. The debtor attended Emory Dental School for two years and Tufts Dental School for one semester. As previously stated, the debtor is now in dental school in Augusta and expects to obtain her dental degree in 1990, during the life of the plan.

11. It is reasonable to assume that upon graduation from dental school in June of 1990, the debtor would be able to earn more than the $500.00 per month her husband pays her for bookkeeping services.

12. There is no evidence of special circumstances in this case, such as inordinate medical expenses, ill health or any other unusual financial demand.

13. The debtor has not previously filed a case under the Bankruptcy Code.

14. There is no showing that the debtor acted dishonestly in contracting her debts.

15. Administration of the debtor's plan would not impose an undue burden on the Chapter 13 Trustee.

## CONCLUSIONS OF LAW

I. *The Debtor's Eligibility to be a Debtor under Chapter 13*

11 U.S.C. § 109(e) provides that "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 ... may be a debtor under chapter 13 of this title." 11 U.S.C. § 109(e).

▪ The objecting creditors argue that the income the debtor receives for performing bookkeeping services for her husband and her husband's business should not be classified as regular income. The only case cited by the creditors in support of that position is *In re Cregut*, 69 B.R. 21 (Bankr. D.Ariz.1986). In that case, the debtor received funds from his father as a gift, and there was no evidence that he performed any services in exchange for those funds. Furthermore, the court found that the debtor had no debts as described in § 109(e), since the scheduled debts were contingent and unliquidated. In contrast, the debts in the case at bar are all noncontingent and liquidated, and the debtor testified that she performed work for her husband and his business in exchange for $500.00 per month.

The phrase "individual with regular income" used in § 109(e) is defined in § 101(29) as an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title." 11 U.S.C. § 101(29). The courts have recognized that Congress intended a liberal interpretation of "regular income". *In re Campbell*, 38 B.R. 193 (Bankr.E.D.N.Y. 1984); *Cohen v. Werner (In re Cohen)*, 13 B.R. 350 (Bankr.E.D.N.Y.1981). See also *Bibb County Department of Family & Children Services v. Hope (In re Hammond)*, 729 F.2d 1391 (11th Cir.1984), where the Eleventh Circuit stated that the "legislative history of the Bankruptcy Reform Act clearly indicates that the purpose of the term 'individual with regular income' is to permit almost any individual with regular income to propose and to have approved a reasonable plan for debt repayment based on that individual's exact circumstances". *Hammonds*, 729 F.2d at 1393.

The Court finds here that the debtor's receipt of $500.00 per month for providing bookkeeping services to her husband and his business constitutes sufficient regular income as contemplated under the Bankruptcy Code and that the debtor is eligible for relief under Chapter 13.

II. *The Good Faith Analysis*

Good faith is determined on a case by case basis, with reference to the totality of the circumstances. In *Kitchens v. Georgia*

*Railroad Bank and Trust Company (In re Kitchens)*, 702 F.2d 885 (11th Cir.1983), the Eleventh Circuit provided a nonexclusive list of factors to be considered by the bankruptcy court in determining whether a debtor has proposed a Chapter 13 plan in good faith as required by 11 U.S.C. § 1325(a)(3). The objecting creditors here argue that five of the factors mentioned in *Kitchens* deserve attention in this case. The five factors cited by the creditors are as follows:

> (1) the type of debt to be discharged and whether such debt would be non-dischargeable in a Chapter 7 case;
>
> (2) the substantiality of the repayment to the unsecured creditors;
>
> (3) the amount of the debtor's income from all sources;
>
> (4) the expected duration of debtor's Chapter 13 plan;
>
> (5) the debtor's demonstrated bona fides or lack of same in dealing with her creditors.

Many courts have considered whether confirmation should be denied for lack of good faith when the debtor's plan discharges debts otherwise nondischargeable in a Chapter 7 case. Educational loans are not dischargeable in a Chapter 7 case under § 523(a)(8), subject to two exceptions. Under Chapter 13, however, educational loans are dischargeable, unless the debtor proposes to treat them as long term debts. The courts have held that debtors should not be faulted for taking advantage of available statutory provisions, but that when it is demonstrated that the "primary purpose" of the Chapter 13 case is to discharge otherwise nondischargeable student loan debt, confirmation should be denied. See *In re Makarchuk*, 76 B.R. 919 (Bankr. N.D.N.Y.1987) and the many cases cited therein.

The courts have found the magnitude of the debtor's nondischargeable student loan debt along with a low percentage of repayment to be factors weighing against confirmation. *In re Makarchuk*, 76 B.R. 919 (Bankr.N.D.N.Y.1987) (confirmation denied where student loans comprised 100% of the unsecured debt and debtor proposed a 48% plan); *In re Nkanang*, 44 B.R. 955 (Bankr. N.D.Ga.1984) (confirmation denied where approximately 50% of the unsecured debt was student loan debt and debtor proposed a 1% payment plan); *In re Williams*, 42 B.R. 474 (Bankr.E.D.Ark.1984) (confirmation denied where student loans comprised 82% of unsecured debt and debtor proposed a 37% plan); *In re Dalby*, 38 B.R. 107 (Bankr.D. Utah 1984) (confirmation denied where student loans comprised 96% of the unsecured claims and debtor proposed a 30% plan); *In re Johnson*, 36 B.R. 67 (Bankr.S.D.Ill.1984) (confirmation denied where 84% of the unsecured debts were educational loans and debtor proposed to pay 10% of her unsecured debts); *In re Gaston*, 25 B.R. 571 (Bankr.S.D. Ohio 1982) (confirmation denied where student loans comprised over 50% of the unsecured debt and the debtor proposed a 4% plan); *In re Jonson*, 17 B.R. 78 (Bankr.S.D.Ind.1981) (confirmation denied where the only debt was a student loan and the plan proposed a 39% payment); *In re Ponanski*, 11 B.R. 661 (Bankr.D.R.I.1981) (confirmation denied where more than half of the debts were comprised of student loans and the plan proposed a 22% payout); *In re Smith*, 8 B.R. 543 (Bankr.D. Utah 1981) (confirmation denied where student loans comprised 66% of the unsecured debt and plan proposed a 16% payment).

In the case at bar, the parties disagree as to what percentage of the unsecured claims are claims that would be nondischargeable in a Chapter 7 case. The objecting creditors contend that 84% of the unsecured debt would be nondischargeable in a Chapter 7 case under 11 U.S.C. § 523(a)(8). Their calculation assumes that all of the claims relating to the debtor's education are debts as defined in § 523(a)(8). The debtor agrees that the claims of Georgia Higher Education Assistance Corporation, Georgia Student Finance Authority, and the United States Department of Education, which claims total $7,700.76, are student loan debts that would not be nondischargeable under Chapter 7, but the debtor contends that the claims by Emory University ("Emory") for $17,500.00 and Tufts University ("Tufts") for $9,746.54 are

not for student loans and would not be nondischargeable under Chapter 7. If the debtor is correct, then only 19% of the unsecured debt would be nondischargeable in a Chapter 7 case.

Section 523(a)(8) makes nondischargeable any debt "for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a non-profit institution". 11 U.S.C. § 523(a)(8). The debtor agrees that both Emory and Tufts are non-profit institutions and that their claims are for tuition, but the debtor disputes the characterization of those debts as "educational loans".

As the Eighth Circuit noted in *United States Department of Health and Human Services v. Smith*, 807 F.2d 122 (8th Cir. 1986), the Bankruptcy Code does not define "educational loan". In that case, the Eighth Circuit examined various definitions of the word "loan". The court primarily looked at the definition of a loan set forth in *National Bank of Paulding v. Fidelity and Casualty Company*, 131 F.Supp. 121 (S.D. Ohio 1954) where that court said "[i]n order to have a loan, there must be an agreement, either expressed or implied, whereby one person advances money to the other and the other agrees to repay it upon such terms as to time and rate of interest, or without interest, as the parties may agree." *National Bank of Paulding*, 131 F.Supp. at 123–124. The court also looked at the definition of the word "loan" in the Second Circuit case of *In re Grand Union Co.*, 219 F. 353 (2nd Cir.1914), *cert. denied* 238 U.S. 626, 35 S.Ct. 664, 59 L.Ed. 1495 (1915), where the court stated:

[a] loan of money is a contract by which one delivers a sum of money to another and the latter agrees to return at a future time a sum equivalent to that which he borrows.

'In order to constitute a loan there must be a contract whereby, in substance one party transfers to the other a sum of money which that other agrees to repay absolutely, together with such additional sums as may be agreed upon for its use. If such be the intent of the parties, the transaction will be considered a loan without regard to its form.'

*In re Grand Union Co.*, 219 F. at 356 (citation omitted).

Under these definitions of "loan", the claims of Emory and Tufts did not arise from educational loans. The debtor attended classes at Emory and Tufts and received academic credit for doing so, but the debtor denied ever borrowing money from either institution and denied ever signing any document agreeing to repay any amount or to pay any interest. The debtor testified that she believed her mother was paying her tuition at the time she attended Tufts and Emory. She testified that she left Tufts because her brother was in a car accident and she needed to help him. She testified that each time she registered at Emory Dental School, she presented a check signed by her mother and she assumed the checks were good. When she learned that in fact the checks were not good, that her mother had serious problems and was unstable, and that Emory was looking to her for payment, she was surprised and upset and left school. She testified that Emory never asked her to sign any papers saying that she owed them anything and that she could not recall ever signing any document for any deferred payment plan. The debtor's testimony on these points was very credible.

It is significant here that Tufts has never filed any objection to the confirmation of the plan, and Emory withdrew all of its objections. At the confirmation hearing, Emory called its own witness who testified that he was unable to locate any documents signed by the debtor agreeing to make payments under Emory's deferred payment plans and that he had never seen any such documents signed by the debtor agreeing to pay Emory any sums of money or any interest.

■ In summary, there is no evidence of any agreement whereby Emory or Tufts advanced money to the debtor or where the debtor agreed to pay tuition upon any terms. Accordingly, the claims by Tufts and Emory are not for educational loans which would be nondischargeable under

Chapter 7, and the educational loan claims discharged under the proposed plan comprise 19% of the unsecured claims.

■ The cases in which courts have denied confirmation on the basis that the primary motive in filing Chapter 13 was to discharge nondischargeable student loan debt typically involve situations where the student loan debt comprised 50% or more of the unsecured claims. Here, student loans comprise only 19% of the unsecured debt. The debtor's primary motive here was to discharge all her debts, many of which were dischargeable debts and which resulted from her mistaken belief that her mother was paying her tuition. The Court does not find that the debtor's primary motive was to discharge debts which would not be dischargeable under Chapter 7.

■ The objecting creditors also argue that the repayment to unsecured creditors of only 15% of their claims is insubstantial and that the debtor has not accounted for income from all sources. The *Kitchens* case does not require the debtor to pay a fixed minimum percentage of his or her unsecured debt in order to demonstrate good faith. The Court has reviewed the debtor's estimate of monthly expenses and does not find them to be excessive. Indeed, the objecting creditors have not challenged any of the debtor's estimated expenses.

The creditors argue that the debtor's new husband should submit his income and expenses for examination by the Court. While this information might have been interesting, the Court doubts that this information would have been relevant in view of the fact that the debtor testified that her husband is paying most of her living expenses. The income and expenses of the non-debtor spouse are relevant in cases where the debtor spouse is shouldering most of the expenses, while the non-debtor spouse is permitted to keep all of his income. Here, it is apparent from the testimony that the non-debtor spouse is contributing his income to the majority of the couple's expenses, and the expenses listed by the debtor are those used by her in maintaining a rental home in Augusta, Georgia, while she attends school away from her husband. The creditors' suggestion that the non-debtor spouse who marries the debtor after the filing of the petition might somehow become responsible for the payment of the debtor's pre-petition debts is without any authority or support. Accordingly, the Court finds that the debtor's payment of $140.00 per month is commensurate with her present ability to pay.

■ However, the Court has noted that the debtor will be graduating from dental school during the life of the plan and it is likely that the debtor will be able to earn more than $500.00 per month once she obtains her dental degree. The debtor included a statement in her pleading clarifying her plan that "in the event the debtor's ability to make greater payments should occur in the future, the debtor will modify her plan pursuant to § 1329 and will provide for enhanced payments to the plan and to all creditors as appropriate". Thus, the Court will include in the order of confirmation a requirement that the debtor file a verified report with the Chapter 13 Trustee every six months commencing on January 1, 1988 fully describing her employment status, and an explanation as to whether and when a modification of the plan increasing payments will be submitted. A failure to comply with this requirement will be deemed a material default under the plan.

■ Next, the objecting creditors argue that the Chapter 13 plan is too short in duration and that the plan should be extended to 60 months in order to demonstrate the debtor's good faith. In response to that objection, the debtor amended her plan to last for 50 months. The Court is not persuaded that a debtor must propose a 60 month plan in order to demonstrate good faith.

■ The final point argued by the objecting creditors is that the debtor has not demonstrated good faith in dealing with the objecting creditors. The creditors argue that in order to show good faith, the debtor should have asked for deferred payment arrangements so that their claims

could be paid in full. While there did not appear to be any evidence that the debtor had attempted to work with the objecting creditors, the Court is unwilling to hold that this factor alone would result in a finding that the plan was not proposed in good faith.

After a careful review of the evidence and the arguments raised by counsel and taking all of the circumstances into consideration including the fact that the debtor's problems in paying for her education were caused by her belief that her mother was paying her tuition, the Court is convinced that the amended plan is a serious attempt to repay debts and that the debtor has proposed her Chapter 13 plan in good faith. An order of confirmation will be entered consistent with this decision.