**In re Julie Ann SIGFRID, Debtor.**

**Bankruptcy No. BKY 4–93–3552.**

United States Bankruptcy Court,
D. Minnesota.

Dec. 6, 1993.

Roderick N. Hale, Minneapolis, MN, for debtor.

Stephen J. Creasey, Minneapolis, MN, for Trustee.

Robert Kugler, Nauni J. Manty, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for Norwest Bank.

### *MEMORANDUM ORDER CONDITIONALLY DENYING CONFIRMATION OF CHAPTER 13 PLAN*

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on the 4th day of November, 1993, on Norwest Bank Minnesota's ("Norwest") objection to confirmation of chapter 13 plan and motion for relief from stay. Appearances were as follows: Robert Kugler and Nauni Manty for Norwest; Roderick Hale for debtor Julie Ann Sigfrid ("Debtor"); and Stephen Creasey for the chapter 13 trustee.

### *FACTS*

1. Norwest is a secured creditor of Debtor pursuant to a Combined Consumer Note and Security Agreement in the amount of $6,500.00 and dated March 5, 1991. As collateral for this debt, Debtor granted Norwest a security interest in a 1989 Ford Probe which has been properly perfected.

2. Debtor defaulted on her loan payments to Norwest. On June 1, 1993, Norwest re-

turned Debtor's payments for the months of April and May in the amount of $535.74 and accelerated the entire debt of $5,732.04.

3. On June 14, 1993, Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code.

4. On June 29, 1993, Debtor filed a chapter 13 plan that provided for payments of $89.00 per month. Norwest and other secured creditors were to be paid outside the plan. Debtor filed a modified plan ("Plan") on October 12, 1993. The terms of the Plan are: $440.00 for the first 12 months; $480.00 for months 13–48; and $505.00 for months 49–60. The Plan contemplates the payment of $18,700.00 in secured claims.

5. Debtor has been married to Chris Sigfrid ("Chris") for eight years and they have three children. Chris has not joined Debtor in filing a chapter 13 petition.

6. Debtor is unemployed and remains at home taking care of the children. Debtor's schedules indicate that Debtor has no monthly income, but that Chris' monthly income is $3,372.00.

7. Debtor intends to fund the Plan solely from payments from Chris. In an affidavit filed with the court, Debtor insists that she is the only member of the family paying the bills listed on her schedules. According to Debtor, Chris gives her sufficient money to pay these debts.

8. Chris also states in his affidavit that "I can assure the Court that I will be providing her sufficient funds to pay for her chapter 13." Apparently Chris will fund the Plan from his income he receives from being self-employed. However, neither the affidavits of Debtor or Chris, nor the Debtor's schedules, indicate where, how or in what line of business Chris is self-employed. The only available information is that Chris is self-employed and has a monthly income of $3,372.00.

7. Thus far, Debtor is current in her Plan and has paid the chapter 13 trustee $880.00.

8. Norwest now objects to the confirmation of the Plan and seeks relief from the stay so it may exercise its state court remedies with respect to its interest in the Ford

Probe. Norwest argues that Debtor is ineligible for chapter 13 relief since she is not "an individual with regular income" as required by section 109(e) of the Bankruptcy Code. Therefore, asserts Norwest, the plan is not confirmable and Norwest should be entitled to relief from the automatic stay.

### DISCUSSION

Pursuant to section 109(e), only an "individual with regular income" is eligible for relief under chapter 13. The phrase "individual with regular income" is defined as an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, other than a stockbroker or a commodity broker." 11 U.S.C. § 101(30). Courts have recognized that Congress intended a liberal interpretation of "regular income." *See In re Ellenburg,* 89 B.R. 258, 260 (Bankr.N.D.Ga.1988); *Cohen v. Werner (In re Cohen),* 13 B.R. 350, 356 (Bankr.E.D.N.Y.1981). The test for regular income is not the type or source of income, but rather its regularity and stability. *In re Varian,* 91 B.R. 653, 654 (Bankr.D.Conn. 1988); *In re Campbell,* 38 B.R. 193, 195 (Bankr.E.D.N.Y.1984).

Generally, certain non-traditional income sources can qualify as sufficiently regular and stable to support a plan. *See, e.g., Bibb County Dep't of Family & Children Services v. Hope (In re Hammond),* 729 F.2d 1391, 1393 (11th Cir.1984) (finding that AFDC payments constitute regular income); *In re Cole,* 3 B.R. 346, 348–49 (Bankr.S.D.W.Va.1980) (holding that odd jobs such as carpentry and "junkin'" are regular income). Further, contributions from family members may amount to regular income. *See, e.g., Rowe v. Connors (In re Rowe),* 110 B.R. 712, 717–18 (Bankr.E.D.Pa.1990) (determining that payments from son were stable and regular); *but see In re Cregut,* 69 B.R. 21, 22–23 (Bankr.D.Ariz.1986) (characterizing monthly payments from father to son as gifts and not income); *In re Campbell,* 38 B.R. at 196 (providing that gratuitous payments from family members generally are not income unless unique circumstances exist).

Many decisions have also addressed whether income from a spouse constitutes regular income. It is well-settled that an unemployed spouse may rely on a codebtor's income to fund a plan. *See, e.g., In re McLeroy*, 106 B.R. 147, 148–49 (Bankr. W.D.Tenn.1989) (noting that language of § 109(e) clearly allows such). Further, an employed spouse has been allowed to supplant his or her income with income of a nondebtor spouse. *See, e.g., In re Ellenburg*, 89 B.R. at 260 (allowing debtor who received $500 per month from husband for bookkeeping services to file a plan); *In re Cohen*, 13 B.R. at 356–57 (determining that a salesman could help fund spouse's plan who worked as a secretary).

Only two reported cases, however, address the narrow issue presented here: whether an unemployed debtor is eligible under § 109(e) when the debtor seeks funding of a plan solely by payments of a nondebtor spouse.

*In re Gestring*, 91 B.R. 870 (Bankr. E.D.Mo.1988) involved an unemployed wife who sought to fund her plan through her husband, a chiropractor and also a debtor in a separate chapter 13 filed minutes after the debtor filed her petition. In holding that the debtor was not eligible under § 109(e), the court simply pointed to the fact that she had many joint obligations with her husband and that she had no income. *Id.* at 871. The court failed to analyze why income from a nondebtor spouse did not constitute regular income. This decision, however, may have been influenced by the two spouses attempt to bypass the chapter 13 debt limitation.

The court in *In re Varian*, 91 B.R. 653 (Bankr.D.Conn.1988) arrived at the opposite result. The debtor in *Varian* had previously been separated from her husband, and during the separation, she incurred debts. Soon thereafter, the couple reconciled and the wife sought to discharge those debts under chapter 13. *Id.* at 655. The nondebtor husband committed $230 per month to the plan. In confirming the plan, the court found it significant that, under state law, the husband was liable for the debts incurred during the separation. *Id.* at 654–55. Additionally, legisla-

tive history favored a liberal construction of regular income. *Id.* at 654.

Apparently there is no consensus as to whether an unemployed debtor may fund a plan from payments by a nondebtor spouse. What is unique in this situation is that, unlike other circumstances where relatives or the government are supporting the debtor, a nondebtor spouse may file a joint petition in bankruptcy. *See* 11 U.S.C. §§ 109(e); 302. When this occurs, both spouses must fully disclose their financial conditions. When a married debtor files individually, however, the nondebtor spouse is saved this requirement. This is because the debtor is funding the plan. Yet when a nondebtor spouse is funding the plan, the nondebtor, for all essential purposes, is acting as a chapter 13 debtor but is escaping the disclosure requirements.[1]

■ This distinction, however, should not preclude a nondebtor spouse from funding the debtors plan. "Regular income" should be liberally construed. Yet this is not to say that any funding constitutes regular income. When the debtor is unemployed, the debtor must establish that the source of the payment, or the *nondebtor spouse's income*, is sufficiently stable and regular. This is a question of fact that must be decided on a case-by-case basis.

■ It must therefore be determined whether Chris' income is sufficiently stable and regular to fund Debtor's chapter 13 plan. Norwest addressed this issue at the hearing and Debtor had ample opportunity to respond. Debtor also submitted affidavits from both Debtor and Chris.

The record is devoid of any information concerning the source of Chris' income. The affidavits indicate that Chris is self-employed and that he gives Debtor "sufficient funds" every month to pay bills. Debtor's schedules further show that Chris' income is $3,372.00 per month. But that is all. The record fails to indicate the nature of Chris' self-employment, how often he works, where he works, or what his liabilities are. Without this in-

---

**1.** If the nondebtor spouse is jointly liable on debts that are being administered in the bank-

ruptcy proceeding, that spouse is gaining the benefits of the discharge and the codebtor stay.

formation it is virtually impossible to determine whether his income is stable and regular.

Debtor points to the fact that she has made two payments under the Plan as dispositive of this issue. This alone is not sufficient evidence that Chris' income is stable and regular. And any probative effect this may have is countered by the reality that Debtor was unable to make two car payments prepetition—when Chris was also providing Debtor with money.

Based on the evidence presented so far, Debtor is ineligible for chapter 13 relief. This determination is supported by the *Campbell* decision. In recognizing that contributions by family members normally do not constitute regular income, the court considered three factors when it allowed a sister and daughter to fund a plan: 1) the daughter was jointly liable on the debt; 2) the daughter was a dependent of the debtor, and thus had an interest in the success of the plan; and 3) the relative's payments of attorney's fees demonstrated a willingness to assist the debtor. *Campbell*, 38 B.R. at 196. The court then articulated:

> "However, none of these factors is a substitute for direct evidence of the actual assent of these parties to assume this responsibility.... Accordingly, the court ... approves confirmation subject to the submission by the contributing relatives ... of affidavits demonstrating both their commitment to and *their ability* to fund debtor's Chapter 13 Plan."

*Id.* (emphasis added). *See also Cohen*, 13 B.R. at 356 (husband testified at hearing regarding his willingness and ability to fund the plan).

In the present case I do not doubt Chris' willingness to fund Debtor's plan. I do, however, find the record deficient concerning Chris' ability to do so.

Finally, Debtor argues that she is an eligible chapter 13 debtor since Chris is jointly liable for the debt to Norwest pursuant to Minn.Stat. § 519.05.[2] It is arguable whether the Ford Probe is a "necessary household article" and is an issue I choose not to decide, for if Chris is jointly liable, the result under § 109(e) would be the same. Liability only indicates the incentive to fund a plan, not the ability. The issue in this case is whether Debtor, or Chris, has the ability to make the payments, not who will be liable if Debtor fails.

### CONCLUSION

Based upon the evidence presented so far, Debtor is ineligible for chapter 13 relief. Because the record is so deficient concerning the stability and regularity of Chris' income, I am inclined to allow Debtor the opportunity to present evidence on the eligibility issue. Until this issue is resolved, I am unable to address Norwest's motion for relief from stay.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1. The confirmation of Debtor's Plan dated October 16, 1993 is CONDITIONALLY DENIED;

2. The parties are to set for an evidentiary hearing the issue of whether the income to fund the Plan is stable and regular; and;

3. Norwest's motion for relief from stay with respect to its interest in the 1989 Ford Probe is continued for hearing concurrent with the evidentiary hearing.

---

2. The sections provides in part: "Where husband and wife are living together, they shall be jointly and severally liable for all necessary household articles and supplies furnished to and used by the family." Minn.Stat. § 519.05 (1992).