**In re Leo C. BOTTELBERGHE,
Debtor.**

No. 99–35432.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Oct. 3, 2000.

be the father of a child was nevertheless liable for accrued unpaid child support due the child).

## ORDER DENYING CONFIRMATION

DENNIS D. O'BRIEN, Chief Judge.

Leo C. Bottelberghe filed a voluntary petition for relief under Chapter 13 on November 2, 1999. On November 17, 1999, he filed a Chapter 13 plan dated the same. A hearing on confirmation was scheduled for January 13, 2000. On January 4, 2000, Farmers Coop Elevator filed an objection to confirmation arguing that the debtor's plan did not devote all of the debtor's disposable income to the plan. The objection particularly challenged the debtor's failure to include all of his non-debtor spouse's income and certain of her separate expenses in the bankruptcy schedules and consideration of the same in preparation of the plan, as well as the reasonableness of several items in the debtor's budget.

The confirmation hearing was continued and on April 10, 2000, the debtor filed amended schedules A, C, I, and J, and a modified plan, dated April 7, 2000. On May 8, 2000, New Holland Credit Company filed its objection to confirmation of the debtor's modified plan, on the same basis as the objection by Farmers. A hearing on confirmation was held on May 11, 2000, at which both Farmers and New Holland appeared along with the debtor and the Trustee, and at which time the Court set the matter on for an evidentiary hearing.

On July 10, 2000, the Court held the evidentiary hearing on the confirmation of the debtor's proposed plan to determine whether the debtor was devoting all of his disposable income to plan payments and thereby meeting the best efforts requirement of 11 U.S.C. § 1325(b)(1)(B).[1] Joseph A. Wentzell appeared on behalf of the debtor, Leo C. Bottelberghe; Eric J. Sherburne appeared on behalf of the Chapter 13 Trustee, Jasmine Z. Keller; Thomas J. Lallier appeared on behalf of Farmers Coop Elevator; and Stephen J. Creasey appeared on behalf of New Holland Credit Company. The debtor testified, as did his wife, Debra Bottelberghe. The Court requested briefing on the issue of promised plan contributions by third party nondebt-

---

1. The so-called "best efforts" test is the requirement under § 1325(b)(1) that, if the plan proposes less than full repayment of allowed unsecured claims, it must provide that all of the debtor's projected disposable income during the life of the plan will be applied to plan payments.

ors and thereafter took the matter under advisement.

The court has jurisdiction over this matter as a core proceeding under 28 U.S.C. § 157(b)(2)(L). Based upon the proceedings and upon all the relevant files and records herein, the Court now makes this ORDER pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I. INTRODUCTION

The debtor and his wife, Mrs. Bottelberghe, have been married for over twenty-five years. They have and support four children together, presently between the ages of 11 and 17. The debtor is employed as a farmhand by Buysse, Inc., and his net monthly earnings are approximately $1,563. Mrs. Bottelberghe's monthly net earnings are at least $1,850 from her primary, full-time employment by Minnesota Manor Health Care, where she has been employed for more than 20 years. The precise budget for the whole family is unknown at this point, as is the exact amount of Mrs. Bottelberghe's net earnings. This is because the debtor's schedules do not reflect income that Mrs. Bottelberghe apparently earns from extra jobs and from collecting leave pay instead of taking paid leave, nor do the debtor's schedules reflect separate expenses to which Mrs. Bottelberghe chooses to apply her extra income.

The debtor's schedules reflect that the family has monthly expenses of $3,176. The total household net income being at least $3,413, there is apparently a household surplus of at least $237 each month. The debtor's plan proposes to pay $225 per month for 55 months, almost the entire monthly household surplus based on the scheduled income and scheduled expenses of the debtor and Mrs. Bottelberghe, which would yield a dividend of approximately 12% on the claims of the general unsecured creditors.

The objecting creditors have presented essentially one determinative argument: the court cannot determine whether the debtor has committed all of his disposable income[2] to the plan without a complete disclosure of Mrs. Bottelberghe's undisclosed expenses and income, even assuming that her contributions to the debtor's plan payments constitute regular income of the debtor such that his eligibility for Chapter 13 relief is not impaired. The creditors also challenge the necessity and reasonableness of several items in the debtor's scheduled household budget.

## II. ANALYSIS

### Nondebtor Spouse Contributions As Regular Income Of The Debtor.

■ The initial question before the Court is whether Mrs. Bottelberghe's willingness and commitment to partially fund her husband's plan payment constitutes regular income of the debtor. Eligibility under Chapter 13 begins with 11 U.S.C. § 109(e), which provides that "[o]nly an individual with regular income ... may be a debtor under chapter 13 of this title." An "[i]ndividual with regular income" is defined in the Bankruptcy Code as an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan...." *See* 11 U.S.C. § 101(30).

■ "The test for regular income is not the type or source of income, but rather its regularity and stability." *See In re Sigfrid,* 161 B.R. 220, 221 (Bankr.D.Minn. 1993) (citations omitted). Indeed, many courts have addressed a variety of nontraditional sources of income and concluded the same to be "sufficiently regular and stable to support a plan," including AFDC payments, certain payments from family members, and even recurring odd jobs. *Id.*

---

**2.** The Code defines "disposable income" as income which is received by the debtor and which is not reasonably necessary to be ex- pended for the maintenance or support of the debtor or a dependent of the debtor. *See* 11 U.S.C. § 1325(b)(2)(A).

In recognizing that "Congress intended the term 'regular income' as used in sections 101(30) and 109(e), to be interpreted broadly," courts have found sufficient income in cases of support derived from "welfare, pensions, investment income, [and] self-employment." *See In re Antoine,* 208 B.R. 17, 19 (Bankr.E.D.N.Y. 1997) (citations omitted). One court described the "plain language of the Code" regarding regular income as "outcome determinative," and thereby found that a seven year old debtor receiving social security survivor benefits was an individual with regular income eligible for Chapter 13 relief because the result would be that the debtor had the necessary income to fund the proposed plan. *See In re Murray,* 199 B.R. 165, 170 (Bankr.M.D.Tenn.1996).

Noting that the legislative history indicated that "Chapter 13 relief is available to any individual with a stable and regular income whether it is social security recipients, self-employed people, pensioners, farmers, or professionals," the court in *In re McMonagle* determined that joint debtors receiving unemployment compensation and working only part-time, respectively, qualified as individuals with regular income for purposes of Chapter 13 eligibility. *See In re McMonagle,* 30 B.R. 899, 902 (Bankr.D.S.D.1983), *citing* H.R.Rep. No. 95–595, 2d Sess. 118–19 (1977), U.S.Code Cong. & Admin.News 5963, 6078–6080 (1977).

In most cases where courts have found nontraditional sources of debtor support to fail the Chapter 13 regular income test, it was because the nature of the income was found to be gratuitous, unreliable or lacking evidence of the requisite stability and regularity. *See,* e.g., *In re Crowder,* 179 B.R. 571, 574 (Bankr.E.D.Ark.1995) (social security benefits not sufficiently regular because payments scheduled to terminate in eleven months, and proposed contributions from parent also insufficient because amount and duration of payments unknown); *In re Jordan,* 226 B.R. 117, 119 (Bankr.D.Mont.1998) (gratuitous payments to a debtor from family members or third parties do not constitute regular income unless joint liability for debts exists, there is a legal obligation to contribute to the support of the debtor, or there is direct evidence of the assent of the third party to assume responsibility for payments to the debtor); *In re Hanlin,* 211 B.R. 147, 148 (Bankr.W.D.N.Y.1997) (able-bodied unmarried debtor whose only source of sustenance is what he can borrow and how much his parents will gift to him is not a person with regular income); *In re Ristic,* 142 B.R. 856 (Bankr.E.D.Wis.1992) (prisoner debtor had no control over work assigned or whether such work would continue); *Sigfrid,* 161 B.R. at 222 (nondebtor spouse may fund a debtor's plan, however, the debtor failed to provide any information concerning the source of the nondebtor spouse's income and accordingly it was impossible to determine whether the income was regular and stable).

The cases that have addressed the subject of nondebtor spouse contributions to the income of the debtor spouse overwhelmingly agree that, assuming the required evidence of regularity and stability is provided, such contributions constitute income of the debtor for purposes of the debtor's Chapter 13 eligibility. *See,* e.g., *Hanlin,* 211 B.R. at 148 (debtor spouse may lay legal claim to working spouse's income, and nondebtor spouse's income and expenses are reviewable by virtue of official bankruptcy scheduling requirements); *Antoine,* 208 B.R. at 20 (enlightened self-interest and duty arising from seventeen year mutually supportive and stable marriage, joint liabilities, and affidavit memorializing nondebtor spouse's promised contribution to debtor spouse's plan obligations supported finding nondebtor spouse's income to be regular income of the debtor); *In re Ellenburg,* 89 B.R. 258, 260 (Bankr.N.D.Ga.1988) (debtor's receipt of monthly payments from nondebtor husband for bookkeeping services constitutes sufficient regular income for Chapter 13 eligibility purposes).

Another court faced with the issue of "the extent to which a married petitioner may rely on contributions from a spouse who does not join in filing" concluded that there is "no good reason for excluding the generosity of a close relative," and noted that in the case of a nondebtor spouse, "there is more than generosity to be considered; the state of matrimony imposes its own financial obligations." *See Cohen v. Werner (In re Cohen)*, 13 B.R. 350, 356 (Bankr.E.D.N.Y.1981).[3] In *Cohen*, the nondebtor spouse testified in court as to "his willingness to assist his wife in meeting her obligations under the plan." *Id.* The court also noted the couple's joint liability on their home mortgage as at least one reason the nondebtor spouse had a strong interest in contributing to his wife's ability to fund her Chapter 13 plan. *Id.*

The court in *Murphy* provided a thorough synthesis of the caselaw developed around the subject of defining regular income under § 101(30), including nontraditional sources of debtor income and income from nondebtor spouses. *See In re Murphy*, 226 B.R. 601, 604–06 (Bankr. M.D.Tenn.1998) (citations omitted). The court examined the legislative history and determined it to be "unusually clear" in intending to "expand and broadly define 'individual with regular income' to include funding from diverse and nontraditional sources." *Id.* at 604, *citing* S.REP. No. 95–989, at 24 (1978), U.S.Code Cong. & Admin.News 5787 at 5809–10 (1978); H.REP. No. 95–595 at 311–12 (1977), U.S.Code Cong. & Admin.News 5963 at 6268–69 (1977).

■ This Court agrees with the conclusion in *Sigfrid* that it is well-settled that a nondebtor spouse may supplant or supplement a debtor spouse's income with his own income for purposes of funding the debtor spouse's Chapter 13 plan, as long as the nondebtor spouse's income is demonstrated to be sufficiently regular and

stable. *See Sigfrid*, 161 B.R. at 222. In this case, the debtor has demonstrated a lengthy marriage to Mrs. Bottelberghe with a history of mutual support, and Mrs. Bottelberghe has testified clearly as to her willingness and commitment to assist the debtor in satisfying his obligations under the proposed plan. Moreover, to the extent she has disclosed information regarding her income, Mrs. Bottelberghe has satisfactorily demonstrated that her income is regular and stable.

The Court finds that Mrs. Bottelberghe's contribution to the household constitutes regular and stable income of the debtor. The debtor is eligible for relief under Chapter 13.

### Nondebtor Spouse Financial Disclosure Requirement.

■ Having decided that Mrs. Bottelberghe's ongoing contribution to the debtor's plan constitutes regular income of the debtor and that he is eligible with her assistance, the next question becomes to what extent disclosure of Mrs. Bottelberghe's income and her separate expenses is required.

Section 1325(b)(1) provides:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

*See* 11 U.S.C. § 1325(b)(1)(A)–(B).

The Code defines disposable income. It is "income which is received by the debtor

---

**3.** *But see Moen v. Hull (In re Hull)*, 251 B.R. 726 (9th Cir. BAP 2000) (nondebtor spouse's income is relevant to the debtor's disposable income analysis only if and to the extent that the debtor has an interest in the income of the nondebtor spouse under applicable state law).

and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." *See* 11 U.S.C. § 1325(b)(2)(A).

In *Sigfrid* the court suggested that "[w]hen a married debtor files individually ... the nondebtor spouse is saved" the requirement of fully disclosing his or her financial condition because it is the debtor who is funding the plan. *See Sigfrid*, 161 B.R. at 222. The court also noted that "when a nondebtor spouse is funding the plan, the nondebtor, for all essential purposes, is acting as a Chapter 13 debtor but is escaping the disclosure requirements." *Id.* This is especially true where the nondebtor spouse is jointly liable on debts that are being administered in the bankruptcy proceeding, because the nondebtor spouse gains the benefits of the discharge and the codebtor stay. *Id.* at n. 1.

The majority of courts that have considered the issue have concluded that the nondebtor spouse does not in fact escape the disclosure requirements. Though there is no reported Eighth Circuit case deciding this question, "bankruptcy courts in other jurisdictions have consistently interpreted § 1325 to require the consideration of a non-debtor spouse's income in determining the debtor's disposable income and, ultimately, the debtor's good faith in proposing the Chapter 13 plan." *See In re Bottorff,* 232 B.R. 171, 173 (Bankr.W.D.Mo.1999) (citations omitted); *see also In re McNichols,* 249 B.R. 160, 170 (Bankr.N.D.Ill.2000); *In re Ehret,* 238 B.R. 85, 88 (Bankr.D.N.J.1999); *In re Saunders,* 60 B.R. 187 (Bankr.N.D.Ohio 1986).

One recent opinion remarked that a payment made by a nondebtor spouse is "in essence, a payment from the debtor," especially where the debtor and nondebtor spouse reside together and pool their incomes. *See In re Greco,* 246 B.R. 226, 232 (Bankr.E.D.Pa.2000) (prefiling attorney fees paid by nondebtor spouse to debtor's bankruptcy lawyer). In that decision, the court dismissed the notion that the bankruptcy court has no jurisdiction over a nondebtor spouse's income and expenses as "a decidedly minority viewpoint that a nondebtor spouse's income and expenses need not be considered in a disposable income calculation in a Chapter 13 case." *Id.; but see In re Harmon,* 118 B.R. 68, 69 (Bankr.E.D.Mich.1990).

To apply the provisions of § 1325 to a married debtor filing individually, most courts "base their calculations of the debtor's disposable income on the debtor's family budget, including the income and expenses of the nondebtor spouse." *See In re Carter,* 205 B.R. 733, 735 (Bankr. E.D.Pa.1996) (citations omitted); *see also In re Kern,* 40 B.R. 26, 28–29 (Bankr. S.D.N.Y.1984). "Consideration of the nondebtor spouse's income is seen as necessary because a portion of that spouse's income is likely to be applied to the basic needs of the debtor, potentially increasing the share of the debtor's own income that is not reasonably necessary for support." *See Carter,* 205 B.R. at 736. The nondebtor spouse's income is part of the § 1325 analysis because it is a "resource" the consideration of which "is necessary to an accurate assessment of the debtor's budget." *Id.* at n. 3.

"This view recognizes the reality that married couples live as a unit, pooling their income and expenses." *Id.* at 736. Unless the parties to a marriage actually maintain separate finances historically or by an agreement between them, usually a "nonfiling spouse's income is available to defray the debtor's reasonably necessary expenses, thus freeing a larger portion of the debtor's separate income for satisfaction of unsecured claims." *See In re Soper,* 152 B.R. 985, 988 (Bankr.D.Kan.1993).

The Official Bankruptcy Forms also appear to contemplate the financial unity of marriage by requiring a married debtor in a Chapter 13 case to report the income and expenses of the debtor and the nonfiling spouse in Schedules I and J. *See Saunders,* 60 B.R. at 187; *Carter,* 205 B.R. at

736; *Hanlin,* 211 B.R. at 148; *see also* 2 K. Lundin, Chapter 13 Bankruptcy § 5.35 at 5–96–5–97.(2d ed.1997).

One court that has concluded that the income and expenses "of the non-debtor spouse must be included in the debtor's Chapter 13 Statement" agreed that "an accurate analysis" of disposable income under § 1325 "is impossible unless the income and expenses of the non-debtor spouse are included in the budget." *See In re Belt,* 106 B.R. 553, 563 (Bankr. N.D.Ind.1989), *citing In re Strong,* 84 B.R. 541, 543 (Bankr.N.D.Ind.1988). The same court noted that in certain dischargeability proceedings, particularly undue hardship discharges of student loans, and in substantial abuse inquiries under § 707(b), courts have considered a nondebtor spouse's income necessary information to make an accurate determination. *Id.* at 562 (citations omitted).

The Court agrees that in order to make an accurate determination of the debtor's disposable income, all of the nondebtor spouse's income and expenses must be disclosed and must be included in the calculation.

 Mrs. Bottelberghe's and the debtor's testimony suggests that Mrs. Bottelberghe's undisclosed additional income and expenses are of equal and modest amounts, such that consideration of the same would be in effect a wash and of no moment. However, the Court and only the Court must determine the reasonableness of all of the debtor's necessary household expenses and whether the debtor's budget therefore reflects his "best efforts" under § 1325(b)(1)(B). Neither the debtor nor the nondebtor spouse may "cherry pick the family expense budget and have luxury" or other unreasonable expenses "paid for through allocation to the nondebtor spouse so that the net effect is to maintain a luxurious lifestyle but only pay a small dividend to unsecured creditors." *See McNichols,* 249 B.R. at 170.

### *Necessity And Reasonableness Of Scheduled Expenses.*

 The creditors' objections to specific scheduled expenses in the debtor's family budget are not sustainable. "The Code requires a meaningful and realistic budget accompanied by devotion of most of the debtor's surplus income to repay creditors." *See Belt,* 106 B.R. at 562. "That is not to say, however, that the debtor must devote every penny of the disposable income to the plan in order to comply with § 1325(b)(1)(B)." *Id.* (citations omitted). The best efforts requirement does not mandate a poverty level existence for the debtor and the debtor's dependents. *See In re Sitarz,* 150 B.R. 710, 718 (Bankr. D.Minn.1993). Chapter 13 debtors "should have some reasonable latitude in determining the manner in which they will maintain and support themselves and their dependents." *Id.* Nondebtor spouse's debts are properly included in the debtor's expenses, and reasonable reserve or contingency funds to meet unexpected or extraordinary expenses are also permissible family expenses. *See Bottorff,* 232 B.R. at 173; *Belt,* 106 B.R. at 562.

 "On the other hand, debtors do not have an absolute right to maintain all the incidents of their past lifestyles and status in society, particularly where they were characterized by luxury, excessive consumption of nonessentials, or inordinately high expenditures for purchases of necessities." *See Sitarz,* 150 B.R. at 718; *see also In re Jones,* 55 B.R. 462, 466–67 (Bankr.D.Minn.1985). "[C]ourts are loathe to favor kindly expenditures which are for luxury goods or serve to perpetuate a luxury lifestyle," especially "in the face of a parsimonious payment to the unsecured creditors." *See McNichols,* 249 B.R. at 171 (finding regular and costly expenses for hairdresser, recreation, manicures, gifts, music lessons, and a housekeeper to be unreasonable, particularly in light of the large combined income of the debtor and nondebtor spouse and a distribution to unsecured creditors of only 10%).

The debtor in this case is indeed proposing a modest repayment plan which will yield at best approximately 12% to unsecured creditors. Nevertheless, under the schedules presented, this debtor and his family are not living a luxurious lifestyle. The debtor and Mrs. Bottelberghe and their four children represent an average working class family of six. *As presently scheduled,* neither spouse earns a sizeable income, nor is their combined income sizeable when the impact of four dependents is considered. Nothing in their *scheduled* budget raises a red flag.

 The creditors complain about the debtor's proposed expenses for average monthly dental services of almost $200, monthly charitable giving and other gifts of $30, monthly pet costs of $16, life insurance payments of $136 a month, entertainment costs of $68 a month, home maintenance of $170 a month, clothing costs of $300 a month, expenditures of nearly $600 a month for food, gasoline costs of $305 a month, and more, including relatively small payments of $246 a month for parochial school tuition. The only remotely questionable expenses are those for monthly car maintenance and gasoline. On the other hand, some of the debtor's expenses are likely underestimated, such as the modest amounts budgeted to feed and clothe a family of six.

Contrary to the creditors' contention that the debtor's expenses are so far beyond the needs of a family of six as to be unreasonable, the Court finds that, as presently scheduled, there is nothing in the debtor's budget that is extraordinary or unreasonable. If the "extra" income Mrs. Bottelberghe earns from sources and in amounts currently unknown to the Court is in fact substantial, then the debtor's disposable income analysis may require a vigorous reconfiguration. Similarly, if the undisclosed budget items are in fact frivolous, luxurious, or otherwise unreasonable, the Court may need to carefully revisit the debtor's schedule of expenses.

## III. DISPOSITION

Because the information supplied by the debtor in this case is deficient with respect to Mrs. Bottelberghe's total income and a complete accounting of her separate expenses, the Court is unable to complete an accurate analysis of whether the plan commits all of the debtor's disposable income to fund the plan. Accordingly, the plan cannot be confirmed due to failure of proof on the issue.

Based on the foregoing, it is hereby **ordered** that Confirmation of the debtor's plan is denied.