**In re Irene F. McKEAN, Debtor.**

**Bankruptcy No. 87–30755.**

United States Bankruptcy Court,
W.D. Texas,
El Paso Division.

Dec. 23, 1987.

Bud Kirk, El Paso, Tex., for debtor.

Phyllis Bracher, El Paso, Tex., Trustee.

## MEMORANDUM OPINION AND ORDER

LEIF M. CLARK, Bankruptcy Judge.

This case involves the propriety of a plan's satisfying the obligations of a co-obligor who is a co-tenant in the Debtor's homestead. The case turns on the interpretation of section 1325(b).

The facts, insofar as they are germane to the legal issue at hand, are relatively simple. The Debtor is a single woman who filed this Chapter 13 case to protect her homestead. She owns the home in tenancy in common with another person who also enjoys the benefits of the home. Under the plan, all of the arrearages owed to the first lienholder on the property would be satisfied under the plan (including that portion of the arrearages attributable to the co-tenant). Monthly payments to the lienholder would also be maintained. The Trustee objects to the plan, contending that it is improper for the plan to fund the obligations of the co-tenant while unsecured creditors receive less than 60% of their claims. The Debtor retorts that section 1322 contemplates the separate classification of co-obligors with a view to differential treatment. The Debtor notes, that in any event, the first lien claim is secured, so that the treatment of the claim is unaffected by the presence of a co-tenancy interest in the collateral. Finally, the Debtor argues that the co-tenant is a dependent and that therefore the cost of maintaining the house is a "reasonable and necessary expense of maintenance and support for the debtor or the debtor's dependent." *See* 11 U.S.C. § 1325(b)(2).

■ Section 1325 prohibits confirmation of a plan when a trustee has objected unless all of the Debtor's projected net disposable income for the three-year period following confirmation of the plan will be devoted to funding the plan payments. Net disposable income is defined as the income received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2)(A). The terms "income" and "dependent" are not defined by the Code. *See* 11 U.S.C. § 101.

The Debtor and co-tenant, owning as they do a co-tenancy interest in the property also have rights of contribution and indemnity against one another to the extent that one party makes payments for the benefit of the other to maintain the property. *Doss v. Roberts*, 487 S.W.2d 839, 842 (Tex.Civ.App.—Texarkana 1972, writ ref'd n.r.e.); *Wooley v. West*, 391 S.W.2d 157, 162 (Tex.Civ.App.—Tyler 1965, writ ref'd n.r.e.). To the extent that the plan satisfies the co-tenant's obligation, therefore, a "credit" is being built up in favor of the Debtor. Thus, for example, should the plan over a three-year period satisfy $3,000 worth of co-tenancy liability, the Debtor is entitled to recover $3,000 from the co-tenant. In the view of this Court, the obligation of the co-tenant should be considered income for purposes of section 1325(b). Otherwise, the Debtor could simply defer the payment of her rights to contribution from the co-tenant for the three-year period of the plan, forcing the unsecured creditors to carry the burden. After three years, the co-tenant could then simply reimburse the Debtor for the amounts so extended, and neither the trustee nor unsecured creditors would have any right to recover these sums.

Section 1325(b) was enacted to assure that the plan payments mirrored the debt-

or's ability to pay. The analysis in 1325(b) is remarkably similar to that employed by the court in section 707(b). *See In re Struggs*, 71 B.R. 96 (Bankr.E.D.Minn.1987). Section 1325(b) represents a Congressional attempt to assure that, if creditors are left unpaid, it is not because the debtor has not devoted his or her best efforts toward payment. Crafting an exception that in effect invites income shifting undercuts the salutary policy of Section 1325(b). Regardless whether the co-tenant *in fact* pays, the income due from the co-tenant should be *projected* as income. If the debtor is unable to collect, that problem should not be shifted to the unsecured creditors, who themselves have no standing to collect from the co-tenant.

Because the current plan fails to include as income the co-tenant's one-half share of the house payments and one-half share of the cure of arrearages, not all of the Debtor's net projected disposable income has been included in the plan. The plan therefore "flunks" the section 1325(b) test.

The Debtor, however, contends that the co-tenant and co-tenant's daughter are dependents and that, therefore, the co-tenant's one-half share of the house payment may be subsumed under the provisions of section 1325(b)(2)(A), which permit the deduction of reasonable and necessary expenses associated with the maintenance or support of the debtor or the debtor's dependent. Thus, the argument goes, it makes no difference whether the contribution of the co-tenant should be included as income, because that item would be offset by the fact that the entire house payment is an item "reasonably necessary for the maintenance and support of the debtor or the debtor's dependent." See 11 U.S.C. § 1325(b)(2)(A).

The difficulty with this position, of course, is that neither the co-tenant nor the co-tenant's daughter are in any way related to the Debtor. While a variety of social theories are currently circulating which might augur for the treatment of co-ten-

ants as dependents, this Court declines to incorporate current social theory into current legal theory. Perhaps a legitimate argument for the extension of the term "dependent" to so-called "novel living arrangements" might be warranted. Such an extension should be subjected to the legislative rather than the judicial process, however. We therefore leave it to Congress to define the term "dependent" with language broad enough to encompass the facts of this case.

For the foregoing reasons, the Court concludes that, under Section 1325(b) this plan may not be confirmed. Confirmation is therefore DENIED.[1]

---

1. At hearing, the Trustee noted that, were the plan payment increased by $70.00 a month, the Trustee would withdraw her objection. With- out that objection, section 1325(b) would no longer be a barrier to confirmation.