**In re Robin E. CROWDER.**

**Bankruptcy No. 94–42520 S.**

United States Bankruptcy Court, E.D. Arkansas, Little Rock Division.

March 22, 1995.

Margaret Meads, Searcy, AR, for Natural State Federal Credit Union.

Clarence Shoffner, Searcy, AR, for debtor.

David D. Coop, Chapter 13 Trustee.

### ORDER

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the Objection to Confirmation of the Plan, filed on January 31, 1995, and the Motion to Prohibit Use of Collateral, filed on February 23, 1995. Both contested matters were filed by the Natural State Federal Credit Union ("the credit union").

This bankruptcy case was filed on December 22, 1994. The debtor was incarcerated on February 7, 1995,[1] and is not eligible for parole for two years. Her only source of income is a monthly social security disability child support payment of approximately $126 she receives for her seventeen-year old son. The debtor's current plan proposes to pay $125 to the trustee for a period of 48 months.[2] During the confirmation hearing, debtor offered to extend the term of the plan for a period of 60 months, the payments for which would total $7,560. The plan proposes to pay the credit union $4,000 as a secured claim with the remainder of payments to be paid for administrative expenses and a pro rata distribution to unsecured creditors.[3]

The credit union holds a security interest in one of the debtor's few possessions, a 1993 Corsica automobile. The Corsica is valued in the schedules at $4,000. The balance due on the Corsica is $8,659.26. The credit union objects to confirmation on the grounds the plan inadequately values the Corsica and requests that the Corsica be surrendered. The objection further asserts, in essence a feasibility argument, that the debtor has no ability to make plan payments due to her incarceration.

The credit union also filed a Motion to Prohibit Use of Cash Collateral, seeking possession of the vehicle because the debtor's tenth grade son was driving the vehicle and, on three recent occasions, caused damage to the vehicle. The Court held a telephonic hearing immediately upon filing of the motion, and, on an emergency basis, permitted the credit union to take possession of the vehicle pending this final hearing.

### Eligibility and Plan Feasibility

Section 109(e) of the Bankruptcy Code, as amended by the Bankruptcy Reform Act of 1994,[4] permits only individuals with regular income owing unsecured debts of less that $250,000 and secure debts of less than $750,000 to file under chapter 13. The issue before the Court is whether the debtor has "regular income" such that she is eligible for Chapter 13. Similarly, as a separate confirmation requirement, the debtor must show that she is able to make all payments under the plan. 11 U.S.C. § 1325(a)(6).

An individual with regular income is one "whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title." 11 U.S.C. § 101(30). For eligibility purposes, there must exist an income stream that is "to a substantial degree reliable and certain in amount and sufficient to fund payments for the term of a Plan. It should be reasonably predictable and dependable." In re Hickman, 104 B.R. 374, 376 (Bankr. D.Colo.1989). This debtor does not have regular and stable income either for eligibility purposes or for purposes of confirmation. Although she expressly testified that she has no source of funds other than the child support, there was evidence of three arguable

---

1. The largest unsecured debt on the petition relates to the debtor's embezzlement of funds. The debtor also has large medical bills she seeks to discharge.

2. The son for whom she receives the benefits will reach the age of 18 on February 14, 1996.

3. The debtor also owns a residence on which there is a mortgage. That property is currently rented, with the rental payments meeting the mortgage. The debtor is unaware of the precise amount of the rental income inasmuch as her father is collecting the rent and paying the mortgage for her. The mortgage payments are made outside of the plan.

4. The Bankruptcy Reform Act applies to cases filed after October 22, 1994. Pub.L. No. 103–394, 108 Stat. 4106 (1994).

574

sources of income: the social security bene-
fits for her son, rental income from her
house, and support by her father.

■ While social security benefits are
sometime sufficient to support a plan, *In re
Solomon,* 166 B.R. 832, 841 (Bankr.D.Md.),
*aff'd,* 173 B.R. 325 (D.Md.1994), in this in-
stance the payments are not sufficiently reg-
ular and stable because they may terminate
within eleven months, when her son reaches
eighteen years of age. The debtor was un-
certain that the payments would or could
continue past that date. Accordingly, the
social security payments cannot be used to
fund a plan for a period of 48 or 60 months.
In any event, the payments are intended as
child support for the benefit of her minor
son. This is not the situation of a parent
using child support in the operation of a
household. Rather, this parent/debtor is in-
carcerated such that other persons are actu-
ally caring for the minor.[5] It is unclear to
the Court that the support payments to the
debtor would continue during the entire peri-
od of her incarceration. *See, e.g., United
States v. Callaway,* 943 F.2d 29 (8th Cir.
1991).

■ The income from the debtor's house
which might assist her towards eligibility, is
unavailable to fund the plan because those
funds are devoted to payment of the mort-
gage. In any event, the debtor's vague testi-
mony that the house was rented is insuffi-
cient to demonstrate eligibility or prove fea-
sibility because she did not even know the
amount of the rental payments. Thus, she
was unable testify as to the amount of her
income.

■ Although it is clear that the debtor's
father wishes to assist his daughter, this
cannot support either eligibility or the plan.
There was no affirmation by him as to any
specific amount to be provided or that any
specific assistance would continue for the
duration of the plan. Indeed, he stated that

he was not prepared "right now" to render
assistance other than that currently being
provided.[6]

■ Finally, the debtor is incarcerated
and will be for at least the next two years.
Accordingly, there are no prospects that she
can be employed and thereby acquire regular
and stable income for at least that period of
time. *See In re Ristic,* 142 B.R. 856 (Bankr.
E.D.Wis.1992) (prisoner lacks steady and re-
liable source of income). Although she is
already looking for post-incarceration em-
ployment, merely seeking employment to be-
gin two years hence is insufficient to demon-
strate either eligibility or feasibility. Since
the debtor has no regular and stable source
of income, she is ineligible for Chapter 13
relief. Moreover, she has provided no evi-
dence that she has or will eventually have
sufficient income to support the plan such
that the plan is not feasible.

### *Objection to Confirmation*

■ Although the debtor asserts that the
value of her vehicle is only $4,000, there was
no credible testimony to support that valua-
tion. The more credible evidence supported
the credit union assertion that the value of
the vehicle is near $9,300.[7] An officer of the
credit union, as well as the prior co-owner
ex-spouse of the debtor, testified that the
value was in excess of $9,000. However,
since there was testimony that there was
high mileage on the vehicle, the appropriate
deduction for such being $775, the value of
the 1993 Corsica is $8,525.00. Since the loan
balance is $8,659.26, the credit union has a
secured claim in the amount of $8,525 and an
unsecured claim of $134.26. Inasmuch as the
plan provides only for a secured claim of
$4,000, the objection to confirmation based
upon the valuation must be sustained.

■ This value is further evidence that the
plan is not feasible. Even assuming that the
debtor could pay the proposed $125 per
month for sixty months, she would have, at

5. The testimony of the debtor's son revealed that
directing the funds to the grandparents may al-
leviate the necessity of his holding two jobs, a
situation which might also permit him to im-
prove his grades.

6. The current assistance is no small amount inas-
much as he is housing and feeding a very healthy
and athletic 17–year old.

7. This includes an enhancement for "add-ons"
and the deduction for the insurance deductible.

the conclusion of the plan, paid only $7,500. That amount will not pay the secured claim ($8,525), her attorneys fees ($1,000), and other administrative expenses. Accordingly, the debtor has not proposed a feasible plan. Based upon these figures and the debtor's statement of income, she cannot propose a feasible plan. Accordingly, the objection to confirmation on the grounds of feasibility must be sustained.

### Possession of the Vehicle

█ The circumstances overwhelmingly support the credit union's request to retain possession of the vehicle and sell it. The debtor is incarcerated and therefore, does not need the vehicle for an effective reorganization. There is no equity in the vehicle. Moreover, she is not in a position to ensure that the vehicle remains insured. Indeed, it appears that the vehicle, as of July 1995, will not be insured. The debtor's tenth grade son has been driving the vehicle and, while it was in his possession, the car has been damaged on three separate occasions. Only two of the accidents were reported to the insurance company. The debtor did have the vehicle repaired, but only after one of the of mishaps. The remaining unrepaired damage to the car was visible on the photographs introduced into evidence. (Credit Union Exhibit No. 3.)

While the debtor asserts that her son needs the vehicle for transportation, there does not appear to be an overwhelming necessity that he use the vehicle.[8] He is a high school student, in possession of an operable mo-ped. His extra-curricular activities are within walking distance, as is the steadier of his two part-time jobs. While the son asserts he cannot use the mo-ped for work because it is too dangerous to drive it at night, the job that actually pays him a reliable income is landscaping—work presumably performed during the day. In any event, the fact that the debtor wishes her son to have transportation is not proof of a necessity for an effective reorganization.

The insurance on the automobile has been cancelled effective July 1995. The son is already contributing $100 per month towards the insurance. In light of the recent spate of damage to the car as well as the cancellation notice, it is unlikely that insurance at a comparable rate can be found. There is no testimony to support even an inference that the son and/or the debtor have sufficient resources to maintain insurance on the automobile. The debtor's father would be willing to assist with the insurance only at the current rate.[9] Inasmuch as the credit union is clearly not adequately protected, the credit union will be permitted to retain possession of the vehicle and sell it in payment of the debt.

### Conclusion

The evidence is overwhelming that the debtor's income is not sufficiently regular to make her eligible for Chapter 13 relief. Further, she has not, and indeed, cannot, propose a feasible plan. Accordingly, it is

**ORDERED** as follows:

1. The Motion to Prohibit Use of Cash Collateral and Seeking Emergency Hearing, filed on February 23, 1995, is GRANTED.

2. The Objection to Confirmation of the Plan, filed on January 31, 1995, is SUSTAINED.

3. This Bankruptcy case is DISMISSED. 11 U.S.C. § 105(a).

**IT IS SO ORDERED.**

---

8. It is noteworthy that the child's father does not believe it is appropriate that his son have possession of the vehicle.

9. The debtor's parents with whom the son currently lives cannot or will not place the son on their insurance so that he could drive one of their two cars.