**IN RE: Calita Elston ROBINSON, Debtor.**

**Case No.: 15–51556–JRS**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Signed July 21, 2015

Filed July 22, 2015

Calita Elston Robinson, Riverdale, GA, pro se.

## ORDER

James R. Sacca, U.S. Bankruptcy Court Judge

The Court is faced with two questions that determine whether this Debtor is eligible to be a chapter 13 debtor pursuant to § 109(e). First, does this debtor have the requisite "regular income" since she lost her job shortly after the petition date, but received a large, lump sum severance payment equal to one year's salary, but otherwise remains unemployed? Second, does this debtor exceed the unsecured debt limit to be in chapter 13 when a large claim for attorneys' fees, to which she has asserted counterclaims in state court proceedings, is the difference between the debtor obtaining chapter 13 relief or not?

### Facts

Calita Elston Robinson ("Ms. Robinson") filed this chapter 13 case on January 27, 2015. On the date she filed the petition, Ms. Robinson was employed as an attorney with The Coca Cola Company ("Coca Cola") and had been employed there for the previous fourteen years. (Doc. 10, Schedule I). Her initial Schedule I indicates that her gross monthly salary was $17,132.38. (*Id.*).

At least two weeks prior to the petition date, Coca Cola informed Ms. Robinson that it would be terminating her employment on March 15, 2015 and that she was eligible to receive one lump sum severance payment (the "Severance"). The Severance totaled $204,596.43, the equivalent of one year's salary, and her ability to receive it was conditioned on Ms. Robinson meeting certain eligibility requirements, including signing a release in favor of Coca Cola.[1] She continued to receive her usual paychecks for her work prior to the termination date. Ms. Robinson received the Severance post-petition and her attorney is currently holding it in her trust account. Pursuant to order of this Court, the Severance is presently being used both to fund Ms. Robinson's chapter 13 plan payments and to pay Court-approved living expenses for her and her two children. Ms. Robinson previously testified that she has been and continues to search for employment, but is still unemployed.[2]

The majority of Ms. Robinson's unsecured debt arises from long, contentious, and still on-going divorce and child custody proceedings. A large portion of the claims are attributable to attorneys' fees from those proceedings, both those of her ex-husband ("Mr. Robinson") and one of her own attorneys. In addition, claims have been filed for property settlement and spousal support, taxes, first and second mortgages, a leased vehicle, and credit cards.[3]

At an earlier confirmation hearing, the chapter 13 trustee (the "Trustee") objected to confirmation for various reasons, one of which was that Ms. Robinson allegedly is not eligible to be a chapter 13 debtor both because she is not a debtor with regular income and her noncontingent, liquidated unsecured debt exceeds that allowed by § 109(e). Ms. Robinson disputes those contentions and the matter is ripe for the Court's determination.

## Discussion

■ Unlike a debtor in chapter 7 whose nonexempt assets may be liquidated in order to pay back creditors, a chapter 13 debtor may retain assets in exchange for committing all of her disposable income to a plan to pay back creditors over a three to five year commitment period. However, certain eligibility requirements exist in order for an individual to be a chapter 13 debtor. Of relevance here, "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of

1. Ms. Robinson signed the release post-petition.

2. At the most recent hearing in the case on July 16, 2015, the Court was advised that Ms. Robinson had two offers of employment pending and a second interview the following week with another company, with the expectation that she would accept one of the offers before the end of the month.

3. Ms. Robinson also scheduled $493,934.00 on a first mortgage that she owes to SunTrust Mortgage, and SunTrust filed a claim for $494,902.04. Ms. Robinson scheduled it as a secured debt, but indicated that the entire amount was unsecured. Pursuant to an order entered in the divorce proceedings, she was required to transfer her interest in this house to Mr. Robinson pre-petition and he became responsible for all mortgage payments, lines of credit, taxes, equity lines, insurance, utilities, and repairs and maintenance. In addition, Mr. Robinson was to pay, indemnify, defend and hold Ms. Robinson harmless and cooperate to absolve her from any responsibility with respect to this mortgage. The claim that was filed in this case by SunTrust indicates that SunTrust believes it is fully secured. Based on all of these facts, the Court believes that the first mortgage on this property is fully secured, and even if it is not, because Ms. Robinson will not realistically be held personally liable for this debt, the Court will not include it in the calculation of Ms. Robinson's unsecured debt.

less than $383,175 and noncontingent, liquidated, secured debts of less than $1,149,-5251" is eligible to be a chapter 13 debtor. 11 U.S.C. § 109(e). The Court is presented with the issue of whether Ms. Robinson is eligible to be a chapter 13 debtor within the meaning of the statute despite: (1) her current sole source of income being a lump sum severance payment and (2) having unsecured claims asserted against her that exceed $383,175.

### 1. Ms. Robinson is an individual with regular income.

Section 109(e) only allows individuals with regular income, except stockbrokers and commodity brokers, to be chapter 13 debtors. An individual with regular income is one "whose income is sufficiently stable and regular to enable such individual to make payments under a plan." 11 U.S.C. § 101(30). The debtor has the burden in proving that he or she has regular income sufficient to be a chapter 13 debtor. *In re Antoine*, 208 B.R. 17, 19 (Bankr.E.D.N.Y.1997).

Courts are split on the time at which it is determined whether a chapter 13 debtor is an individual with regular income. *See In re Pellegrino*, 423 B.R. 586, 590 (1st Cir. BAP 2010). Some courts conclude that the relevant time is the date of filing the petition. *See, e.g., In re Smith*, 234 B.R. 852 (Bankr.M.D.Ga.1999). Others look prospectively, such as at the time of confirmation. *See, e.g., In re Goodrich*, 257 B.R. 101 (Bankr.M.D.Fla. 2000). And still others look at the time most favorable to the debtor. *See, e.g., Matter of Moore*, 17 B.R. 551 (Bankr. M.D.Fla.1982). Because this is an eligibility issue, the Court believes the proper focus is whether a debtor had regular income at the time the petition was filed. Although Ms. Robinson was still receiving her ordinary paycheck from her employment with Coca Cola on the date of the petition, it was known on the petition date that this would cease in the very near future, but that she would be provided with a lump sum payment to replace those wages equal to a period of 52 weeks. For the reasons set forth below, the Court concludes that the Severance is regular income sufficient for Ms. Robinson to be eligible to be a chapter 13 debtor.

Courts have interpreted regular income broadly, and "have recognized that congress intended a liberal interpretation of regular income." *In re Ellenburg*, 89 B.R. 258, 260 (Bankr.N.D.Ga.1988). "That § 101(30) defines individual with regular income by reference to stability and regularity suggests that the existence of regular income is predominately a fact question answered by examining the flow of money available to the debtor." *In re Murphy*, 226 B.R. 601, 604 (Bankr.M.D.Tenn.1998).

The type or source of income is typically not the focus of this inquiry; instead, the test for regular income is its regularity and stability sufficient to allow the debtor to fund a plan. *Id.*; *In re Goodrich*, 257 B.R. 101 (Bankr.M.D.Fla. 2000); *In re Gomery*, 523 B.R. 773 (Bankr.W.D.Mich.2015); *In re Letterese*, 397 B.R. 507 (Bankr.S.D.Fla.2008) ("[P]ractically speaking the court must conclude whether the debtor is able to make the required payments under the chapter 13 plan."); *In re Campbell*, 38 B.R. 193 (Bankr.E.D.N.Y.1984) ("The type or source of income is no longer a rigid criterion for determining a debtor's eligibility for Chapter 13 relief"). Based on the particular circumstances of each case, regular income can include among other things gratuitous spousal and familial sup-

port,[4] welfare,[5] social security,[6] unemployment compensation,[7] child support,[8] pension income,[9] investment income,[10] self-employment income,[11] and disability.[12] Because the meaning of "income" in the statute is so broad, the Court is satisfied that the Severance is a type of income sufficient to meet the eligibility requirement. Thus, the Court must focus its analysis on whether the Severance is sufficiently "stable" and "regular" to enable Ms. Robinson to make payments under a chapter 13 plan and fall within the statutory meaning of "regular income."

 For any issue of statutory interpretation, the Court must begin with the statutory language itself. "The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute." *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 487–88 (11th Cir.2015). "Where the language of a statute is unambiguous ... we need not, and ought not, consider legislative history." *Id.*

 A lump sum severance payment arguably does not fit within the definition of regular because the debtor will only receive it once. Although the Code does not provide definitions of what it means for income to be "stable" or "regular," the words of the applicable statute themselves provide that the purpose of the regular income requirement is to ensure that debtors are able to make payments under a chapter 13 plan. The statute defines an individual with regular income as one "whose income is sufficiently stable and regular *to enable such individual to make payments under a plan.*" 11 U.S.C. § 101(30) (emphasis added). The income does not have to be unequivocally stable and regular, only "sufficiently" stable and regular to ensure plan payments can be made. In addition, the legislative history explains that the purpose is to ensure debtors can make plan payments. That a chapter 13 debtor must be an "individual with regular income" was introduced in the Bankruptcy Reform Act of 1978 with the

**4.** *See, e.g., In re Antoine,* 208 B.R. 17 (Bankr. E.D.N.Y.1997) (spousal support regular income); *In re Campbell,* 38 B.R. 193 (Bankr. E.D.N.Y.1984) (familial support regular income); *In re Murphy,* 226 B.R. 601 (Bankr. M.D.Tenn.1998) (unmarried, long-term companion support regular income); *In re Baird,* 228 B.R. 324 (Bankr.M.D.Fla.1999) (support from debtor's son sufficient to make plan payments regular income). *But see In re Hanlin,* 211 B.R. 147 (Bankr.W.D.N.Y.1997) (familial support to unemployed student not regular income).

**5.** *In re Hammonds,* 729 F.2d 1391 (11th Cir. 1984).

**6.** *In re Rigales,* 290 B.R. 401 (Bankr.D.N.M. 2003). *But see In re Santiago–Monteverde,* 512 B.R. 432 (S.D.N.Y.2014).

**7.** *In re Overstreet,* 23 B.R. 712 (Bankr.W.D.La. 1982); *In re McMonagle,* 30 B.R. 899 (Bankr. D.S.D.1983); *In re Ford,* 345 B.R. 713 (Bankr.D.Colo.2006) (finding unemployment

compensation and income from being part-time pizza delivery person sufficient to make chapter 13 plan feasible).

**8.** *In re Taylor,* 15 B.R. 596 (Bankr.D.Ariz. 1981).

**9.** H.R. Rep. 95–595, at 312.

**10.** H.R. Rep. 95–595, at 312.

**11.** *See, e.g., Matter of Monaco,* 36 B.R. 882 (Bankr.M.D.Fla.1983); *In re Cole,* 3 B.R. 346 (Bankr.S.D.W.Va.1980) (income from odd jobs regular income).

**12.** *In re Lundahl,* 307 B.R. 233 (Bankr.D.Utah 2003) ("The Court notes that the Debtor's sole source of income, a disability stipend in the amount of $350 per month, meets the statutory requirement for 'regular income.' "); *In re Howell,* 4 B.R. 102 (Bankr.M.D.Tenn.1980); *In re Dawson,* 13 B.R. 107 (Bankr.M.D.Ala. 1981).

purpose of expanding the types of individuals that are eligible to be chapter 13 debtors beyond the pre–1978 restrictive "wage earner" standard. H.R. Rep. 95–595, at 312. "The definition encompasses all individuals with incomes that are sufficiently stable and regular to enable them to make payments under a chapter 13 plan." *Id.* "[T]he legislative history of the Bankruptcy Reform Act clearly indicates that the purpose of the term 'individual with regular income' is to permit almost any individual with regular income to propose and have approved a reasonable plan for debt repayment based on that individual's exact circumstances." *In re Hammonds,* 729 F.2d 1391, 1393 (11th Cir.1984) (citing *United States v. Devall,* 704 F.2d 1513, 1516 (11th Cir.1983)). This makes sense in considering the scheme of chapter 13 bankruptcy cases. If debtors are unable to make payments under a plan to pay back their creditors then they should not be eligible to receive the benefits of chapter 13, mainly retaining all of their assets. But in this case, the Severance is serving that purpose: it will allow Ms. Robinson to make her plan payments until she obtains another job.

Although a court must begin its analysis with the statutory language itself, a general principle of statutory construction is that "a statute should be interpreted and applied with an understanding and appreciation of the purpose it was intended to serve." *In re Graupner,* 537 F.3d 1295, 1302 (11th Cir.2008) (internal quotation marks omitted). "[O]ftentimes the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *King v. Burwell,* 576 U.S. ——, 135 S.Ct. 2480, 2483, 192 L.Ed.2d 483 (2015). "Because the legislature is presumed to act with sensible and reasonable purpose, a statute should, if at all possible, be read so as to avoid an unjust or absurd conclusion." *In re Graupner,* 537 F.3d at 1302 (internal quotation marks omitted). "[A] court may look beyond the plain language of a statute if applying the plain language would produce an absurd result." *In re Lehman,* 205 F.3d 1255, 1256 (11th Cir.2000). In construing a statute, courts should look at the entire statutory context, the whole law, and its policy. *Durr v. Shinseki,* 638 F.3d 1342, 1349 (11th Cir.2011).

In this case, to interpret the statute in a way to conclude Ms. Robinson does not have regular income leads both to an unjust and absurd result, and is also not an interpretation which serves the purpose of the requirement. First, it is not lost on this Court that had Ms. Robinson's former employer paid the severance out in regular installments just as though she were still being paid, which many former employers do, it would be considered regular income and this would not even be an issue. Second, it appears that in Georgia, Ms. Robinson had two options: (1) she could collect the Severance that was offered to her for the 52 weeks after her termination or (2) collect unemployment benefits for those same 52 weeks, but not both. *See* O.C.G.A. § 34–8–194(5)(A). If Ms. Robinson had decided to forgo her Severance and collect unemployment—which would undoubtedly have produced less money to her and her creditors—she would be an individual with regular income, but could possibly qualify for Chapter 13 relief. Instead, Coca Cola provided a lump sum severance package. It seems wholly inequitable that Coca Cola's policy to provide her Severance in a lump sum instead of incremental payments should determine whether Ms. Robinson is eligible to receive the benefits of chapter 13 when she otherwise can potentially fund a plan. To interpret the statute in such a limited way would not coincide with the purpose of the regular income requirement.

The legislative history and case law further support that the usage of regularity and stability in § 101(30) should not be strictly construed to comport with that as defined by a dictionary. For example, the legislative history provides that both investment income and self-employment income are intended to be considered regular income so long as the debtor can make his or her plan payments. Both of those types of income may not easily fit within the constraints of the limitedly defined terms. Investment income in particular almost always comes with risk and may suddenly stop producing income for months at a time, or even result in a loss. The Severance in this case is essentially equivalent to an income that is only received once, but it is intended to cover an entire year. The Court cannot conclude that Congress intended to preempt individuals with income that is paid only annually or seasonally from being chapter 13 debtors, as long as they can fund a plan. *See In re Beck*, 309 B.R. 340 (Bankr.N.D.Ca. 2004) (regular income under § 109(e) when seasonal income was averaged out at $1,800 per month). *But see In re Hickman*, 104 B.R. 374 (Bankr.D.Colo.1989).

Moreover, in this case, the Severance payment is being held in Ms. Robinson's attorney's trust fund account from which plan payments to the chapter 13 trustee are being made. In essence, "regularity" and "stability" in the strictest sense are being imposed by the Court. The Severance will last at least a year to make plan payments and the Court has set a restricted budget in which Ms. Robinson may use the money for living expenses. Because Ms. Robinson does not have possession of the Severance, the Court is not concerned it will be frivolously spent resulting in an inability to make plan payments.

■■■■■ Although a severance, whether in lump sum or allotted payments, does have a clear ending point in which it will no longer be available for plan payments, so too does unemployment compensation or contract labor, which courts have found to be regular income. Chapter 13 debtors always risk losing government benefits or losing their job, and indeed some lose multiple jobs throughout a chapter 13 case. *See In re Murphy*, 226 B.R. at 605 ("Income includes entitlements and benefits that can be freely given and freely taken away by governments."). "Every case and every individual must be considered on the individual merits and circumstances." *In re Smith*, 234 B.R. at 855. "It is conceivable that the concept of 'regular income' could be interpreted to include an individual who is not employed at the time of the filing of the case if that individual's employment history reflects a record of satisfactory and continuous prior employment so as to provide reasonable assurances that replacement employment will be obtained in the immediate future ... [but] [e]ven that case should not be filed unless [urgent intervening circumstances require it]." *Id.*

■■■■■ Under the circumstances of this case, the Court believes Ms. Robinson has a legitimate need to restructure her debts in bankruptcy. Based on her qualifications and prior employment with Coca Cola for fourteen years, it appears to the Court that Ms. Robinson's should have the ability to obtain employment somewhere soon, albeit potentially at a lesser salary. Chapter 13 is meant to allow individuals to rehabilitate their financial situation and this debtor, who learned she will be losing her job on the eve of filing bankruptcy but was provided with a year's worth of wages with which she is able to make plan payments, is entitled to that financial rehabilitation.

Accordingly, the Court finds that Ms. Robinson is an individual with regular in-

come, and may be eligible to be a chapter 13 if she can satisfy the other requirements of the Code. However, determining her eligibility on this issue is completely distinct from the determination of whether a plan is feasible. If Ms. Robinson continues to remain unemployed, the Court will have concerns about confirming *any* plan because it is unable to see how such plan will be feasible. At a certain point, if Ms. Robinson's future income is still unknown and the Court is unable to see sufficient progress in her obtaining employment, even if the Severance is still being used to make plan payments, it may decide that a plan is simply not feasible and convert the case to chapter 7 or, at her request, to chapter 11.[13]

## 2. The Court will make a final determination on eligibility when Ms. Robinson's liability to Ms. Cohen is finally resolved.

In order to be eligible to be a chapter 13 debtor, as of the petition date the debtor must owe noncontingent, liquidated, unsecured debts less of than $383,175 and non-contingent, liquidated, secured debts of less than $1,149,525. 11 U.S.C. § 109(e). Because it is clear that Ms. Robinson's secured debt is less than $1,149,525, the Court will focus on the amount of her noncontingent, liquidated, unsecured debt.

 The amount of debt is normally determined by the debtor's originally filed schedules, checking only to see if the schedules were made in good faith. *In re Scovis*, 249 F.3d 975, 982 (9th Cir.2001);

*In re Harkness*, 189 Fed.Appx. 311, 314 (5th Cir.2006); *In re Tropper*, 2010 WL 9012919, at *7 (Bankr.N.D.Ga. July 19, 2010). The majority of courts conclude that § 506(a)(1) applies in determining eligibility under § 109(e). *See In re Grenchik*, 386 B.R. 915 (Bankr.S.D.Ga.2007) (collecting cases). When calculating secured debt, "the under-secured portion must be subtracted from the secured debt and added to the unsecured debt." *In re Tropper*, 2010 WL 9012919, at *7. However, it may not be appropriate "to treat the under-secured portion of a debt as unsecured when the debt is secured only by a security interest in real property that is the debtor's principal residence because such a secured claim would not be subject to bifurcation and cramdown in a chapter 13 case, pursuant to section 1322(b)(2)." *Id.*

The proofs of claims filed in this case result in a much larger amount of unsecured claims than do Ms. Robinson's schedules. The unsecured claims she scheduled total $381,279.97, some of which are disputed, which amount is just below the eligibility requirement. The unsecured claims filed in this case total $508,932.50,[14] but that does not end the inquiry.

 In this case, the claim of Beverly Cohen ("Ms.Cohen") was scheduled as a disputed claim for $100,000 and a proof of claim was filed for $185,217.41. Ms. Cohen was one of multiple attorneys that represented Ms. Robinson in her divorce proceedings. Prior to this bankruptcy case, Ms. Robinson and Ms. Cohen were

---

**13.** Some of the parties in interest have voiced a concern that if Ms. Robinson can continue to use the Severance to fund her living expenses it creates a disincentive for her to find a job and that she will perhaps intentionally, whittle down the resources available to pay creditors in this case. At this point in the case, the Court does not believe that is Ms. Robinson's intention, but it has advised her

that she must be diligent in her job search. Given that she has two job offers and it is her intention to be employed by the end of the month, the Court expects that this concern will shortly be moot.

**14.** These amounts both take into account amounts of the unsecured junior liens.

448

involved in litigation in state court regarding the amount, if any, of the fees that are owed and the validity of the counterclaims. In addition, Ms. Robinson has objected to Ms. Cohen's claim in this case and disputes her liability as to the entire amount. If Ms. Cohen's claim is disallowed, or if it reduced sufficiently, Ms. Robinson's unsecured debt would be less than the statutory required amount and she would be eligible for relief in chapter 13. If most or all of the claim is allowed, she exceeds the statutory amount and would not be eligible. The issue is whether Ms. Cohen's claim is a noncontingent and liquidated debt.

■ "A debt is not contingent if all the events giving rise to liability have occurred prior to the filing of the bankruptcy petition." *In re Leggett*, 335 B.R. 227, 229 (Bankr.N.D.Ga.2005). Ms. Cohen's claim is not contingent because all the events giving rise to Ms. Robinson's alleged liability occurred prior to the case being filed— Ms. Cohen was hired pursuant to a contract and some amount of hours were spent working and billed prepetition, so nothing else must occur for a liability in some amount to arise.

■ "A debt is liquidated if its amount is certain due to agreement of the parties or by operation of law." *Id.* "[T]he concept of a liquidated debt relates to the amount of liability, not the existence of liability." *U.S. v. Verdunn*, 89 F.3d 799, 802 (11th Cir.1996). "If the amount of the debt is dependent, however, upon a future exercise of discretion, not restricted by specific criteria, the claim is unliquidated." *Id.* Generally, when a debt is owed pursuant to a contractual obligation it is liquidated, whereas a personal injury action, or something similar that would require an evidentiary hearing to determine that the

amount owed, is unliquidated. *See Id.* at 802 nn. 12 & 13. In *Verdunn*, the Eleventh Circuit held that a debtor's contested tax liability was liquidated. The court reasoned that the amount of liability was evident from a statutory notice of deficiency provided to the debtor, which was easily computed through the application of fixed legal standards set forth in the tax code. *Id.* at 803. The fact that the debtor disputed his liability did not necessarily make the debt unliquidated.

It is worth mentioning that the situation in the instant case differs from a normal contract case or the situation in *Verdunn*. In a normal contract case, where it is clear that the debt is liquidated, the parties to the contract agree to a sum certain to be paid—either a specific contract amount (I will pay you $X according to certain terms) or a set amount of a product at a set price (I will buy five widgets at $50 each). In a situation such as the one in *Verdunn*, a party's income is based on the taxpayers conduct and the tax is what it is based on an objective tax code. But in this case, neither party agreed to a sum certain, but instead only agreed on an hourly rate. Ms. Cohen, the party providing the services, unilaterally provided a billing statement based on the hours she asserts she spent on the case. The parties did not agree to a flat fee or a minimum fee. Thus, Ms. Cohen had complete control over and was solely able to determine the amount of the claim and that amount is not only disputed, but Ms. Robinson contends that Ms. Cohen actually damaged her by the performance of those services.[15]

■ While *Verdunn* deals with the issue of whether or not a claim is liquidated, it does not address the specific question of whether a court should await determination of liability before deciding eligibility.

---

15. The resolution of the claim and counterclaims will most likely require an evidentiary

hearing.

*In re Leggett,* 335 B.R. 227 (Bankr.N.D.Ga. 2005). The language of § 109(e) states that a debtor cannot *owe* more *debts* than the statutory limit. 11 U.S.C. § 109(e); *In re Leggett,* 335 B.R. at 230. In this case, Ms. Robinson argues, for various reasons, that she does not *owe* Ms. Cohen anything. "The Bankruptcy Code expressly defines 'debt' as 'liability on a claim,' and the plain meaning of 'owe' is 'to be under an obligation to pay.'" *In re Leggett,* 335 B.R. at 230 (citations omitted). A "claim," on the other hand, is defined more broadly as a "right to payment, whether or not such right is ... disputed...." 11 U§ 101(5)(a) "The use of 'debt' in § 109(e) instead of 'claim,' together with the requirement that the debtor owe it, demonstrates that chapter 13 eligibility is properly based on the amount of the debtor's actual liability." *Id.* Thus, Ms. Robinson's eligibility in this case depends on whether she was actually liable to Ms. Cohen for some or all of her claim as of the date of the petition. *Id.* After discussing the issue of whether a debt is liquidated, the court in *Verdunn* concluded that the case was to be dismissed because the debtor was ineligible for chapter 13 relief. But the *Verdunn* court had the benefit of hindsight; by the time the case reached the Eleventh Circuit, the debtor's liability was already finally decided and he did in fact owe a tax deficiency that made him ineligible to be a chapter 13 debtor. In this case, we do not have the same benefit. Ms. Cohen's claim has been the subject of a counterclaim in state court, but has not yet been decided. In addition, Ms. Robinson objected to Ms. Cohen's claim in this case, but the objection to claim has yet to be decided.

█ "A debtor who does not owe an alleged debt that would otherwise render him ineligible should not be denied the right to proceed in chapter 13 merely because an adverse party asserts a claim." *Id.* Otherwise, a creditor that wants to prevent a party from being a chapter 13 debtor, for example because its debt would be dischargeable in a chapter 13 but not the other chapters, could inflate its numbers in order keep a debtor out of chapter 13, even though those numbers are strongly contested. That a debtor would be denied the benefits of chapter 13 in such a scenario is wholly inequitable. The contrary is also true: it would be inequitable to give a debtor the benefits of chapter 13 relief merely because she disputes a claim. Under these facts, Ms. Robinson should be given an opportunity to litigate the issue of whether she does not owe all or a portion of that debt.

█ It is appropriate for a court to withhold confirmation of a plan allowing a debtor to obtain chapter 13 relief until it first determines that she is in fact an eligible chapter 13 debtor. *Id.* Because Ms. Robinson's liability to Ms. Cohen is contested, and a determination of the amount of the debt that she actually owes will result in whether or not she will be eligible to be a chapter 13 debtor, it is fair to allow the parties to finish the ongoing litigation regarding Ms. Cohen's claim before the Court makes an eligibility determination. *See id.* ("Thus, the statute's denial of chapter 13 eligibility to debtors who owe debts in excess of its limits requires that liability be determined before the case can proceed to confirmation."). While the Court awaits a resolution, it will allow Ms. Robinson to remain in this chapter 13 proceeding, but will not confirm a plan. In doing so, the Court notes that this is appropriate because the creditors' interests can and will be protected by this result. Although the confirmation of the case will be delayed, the administration of the case will not: Ms. Robinson must continue making any adequate protection payments and plan payments, which this Court can authorize be disbursed to creditors, including distributions from Ms. Robinson's recently liquidated stock options, subject to proper reserves for objections to

claims. *See id.* at 232. If this Court were to order that the case be converted, this same result with respect to distributions would occur, as well. Aside from Ms. Cohen, who will have to wait to get paid in any chapter of the Code until her claim is finally resolved, the creditors can continue to be paid while awaiting a resolution of Ms. Cohen's claim and an eligibility determination.

### Conclusion

For the reasons stated above, it is hereby

ORDERED that the Ms. Robinson is an individual with regular income pursuant to 11 U.S.C. § 109(e), it is

FURTHER ORDERED that the Court will await its ruling on whether Ms. Robinson is eligible for chapter 13 relief pending the resolution of whether and to what extent Ms. Robinson is liable to Ms. Cohen.

**IT IS ORDERED.**